UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY,<br>　　Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:10-cv-506 (VLB) |
| LUIGI JEAN-PIERRE ET AL., | : | |
| 　　Defendants. | : | August 30, 2011 |

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS [Doc. #51]

This is a declaratory judgment action filed by Allstate Insurance Company ("Allstate") against its insured Luigi Jean-Pierre ("Jean-Pierre") seeking an order from this court declaring that Allstate has no duty to defend or indemnify Jean-Pierre from liability or losses arising out of a house fire. Currently pending before the Court is the Allstate's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) and D.Conn. Local Rule 7(a), Counts Two, Three, and Four of Jean-Pierre's Counterclaim and the prayer for punitive damages and legal fees and costs that corresponds with Count Four [Dkt. #51] on the basis that they fail to state a claim upon which relief can be granted. Jean-Pierre, the Defendant and Counterclaim Plaintiff, filed a counterclaim for damages against Allstate, the Plaintiff and Counterclaim Defendant, alleging breach of contract (Count One), waiver and estoppel (Counts Two and Three), and breach of the common law implied covenant of good faith and fair dealing (Count Four). For the reasons set forth below, Allstate's motion to dismiss is GRANTED in part and DENIED in part.

1

## I. BACKGROUND

Allstate is a foreign corporation incorporated under the laws of Illinois and authorized to transact business and sell insurance products in the State of Connecticut. [Dkt. #1, Complaint]. Jean-Pierre is a resident of Connecticut. Allstate issued Jean-Pierre a Deluxe Homeowners Policy (the "policy"), providing liability and property insurance coverage for the property located at 2345 Fairfield Avenue, Bridgeport, Connecticut (the "property"). Jean-Pierre claims that at the time he applied for the policy he listed a mailing address in Stamford, Connecticut where Allstate later sent all premium invoices. . [Dkt. #51] Jean-Pierre also asserts that Allstate or its agents knew that he did not reside at the property and that he rented commercial and residential units at the property. *Id.* Finally, Jean-Pierre claims that Allstate accepted policy premium payments from him for the policy for nearly two years, from February 2007 through December 2009. *Id.*

On December 7, 2007, a fire broke out at the property. Following the fire, Jean-Pierre sought defense and indemnification from Allstate under the policy. Allstate in turn razed the property, paid-off the mortgage encumbering the property, and attempted to negotiate claims. Allstate also continued to accept Jean-Pierre's policy premium payments. On November 24, 2009, Jean-Pierre was sued by several tenants, occupants, and lessees of the property for various injuries sustained in the fire. The lawsuit, *Maria C. Muniz, Administrator of the*

2

*Estate of Arturo Icelo, et al. v. Luigi Jean Pierre et al*, docket number FBT-CV-09-5029068-S, is currently pending in the Superior Court of the State of Connecticut, Judicial District of Bridgeport (the "Muniz lawsuit"). Thereafter, Jean-Pierre alleges, Allstate denied coverage under the policy on the basis that Jean-Pierre did not reside at or maintained commercial space on the property, triggering a coverage exclusion. Jean-Pierre claims that Allstate acted in bad faith by relying upon, and it either waived or is estopped from asserting the exclusion on the basis of facts it either knew, or of which knowledge is imputed to it, prior to the issuance of the policy. *Id.* Allstate denies that it knew that Jean-Pierre did not reside at the property or that he rented space at the property to a residential or commercial tenant. Allstate seeks a declaratory judgment that the policy affords no coverage for the fire by virtue of a coverage exclusion based on his use of the property for economic benefit. [Dkt, #1].

## II. STANDARD OF REVIEW

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks omitted).

### III. DISCUSSION

#### A. Analysis of Defendant's Counterclaim Asserting that Allstate Acted in Bad Faith (Count Four)

Jean-Pierre asserts a counterclaim of bad faith alleging that Allstate breached the policy's implied covenant of good faith and fair dealing by seeking to deny coverage to Jean-Pierre and refusing to settle the Muniz lawsuit. As evidence of bad faith, Jean-Pierre cites Allstate's affirmative actions such as

accepting premium payments, razing and paying the mortgage encumbering the property, and trying to negotiate a resolution of the property damage claims arising from the fire and then refusing to settle the underlying lawsuit and attempting to void coverage two years later on the basis of facts it or its agents knew when the policy was issued.

In this diversity case, federal law governs the degree of particularity with which such an allegation must be pled in a federal complaint while Connecticut law defines the elements of a cause of action for bad faith. *Martin v. Am. Equity Ins. Co.*, 185 F. Supp. 2d 162, 164 (D. Conn. 2002) (citing *Stern v. General Electric Co.*, 924 F.2d 472, 476, n.6 (2d Cir. 1991)).

Although Fed. R. Civ. P. 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). *Id.* (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks omitted).

Connecticut law implies a duty of good faith and fair dealing as a covenant into every contract or contractual relationship. *See De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432, 849 A.2d 382 (2004). This implied covenant of good faith and fair dealing is applicable to insurance contracts. *See Verrastro v. Middlesex Ins. Co.*, 207 Conn. 179, 190, 540 A.2d 693 (1988). Additionally, Connecticut law recognizes an independent cause of action in tort for bad faith arising from an insurer's breach of its common-law duty of good faith. *American Equity Ins. Co.*, 185 F.Supp.2d at 164 (citing *Buckman v. People Express, Inc.*, 205 Conn. 166, 170, 530 A.2d 596 (1987)). As another court in this district has held, in order to establish a claim for bad faith under Connecticut Law, the plaintiff is required to show: "(1) That the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits; (2) that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits; and (3) that when committing the acts by which it injured the plaintiff's right to receive benefits he was reasonably expected to receive under the contract, the defendant was acting in bad faith." *Franco v. Yale Univ.*, 238 F.Supp.2d 449, 455 (D.Conn 2002).

The Connecticut Supreme Court has defined bad faith as:

> "the opposite of good faith, generally implying a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties . . . Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or will." *Van Dorsten v. Provident Life and Acc. Ins. Co.*, 554 F.Supp.2d 285, 287 (D.Conn. 2008) (citing *Buckman v. People Express Inc.*, 205 Conn. 166, 171 (1987)).

6

Consistent with this requirement that the conduct alleged to have constituted a breach of the implied covenant of good faith and fair dealing must have been committed with a state of mind affirmatively operating with furtive design or will, Connecticut courts have required specific factual pleading of a sinister intent in order to sufficiently plead a claim of bad faith.

For example, in *Michalek v. Allstate Ins. Co.*, a policy holder's estate brought a bad faith claim against her insurer after it allegedly retained premium payments paid by the insured but refused to provide coverage under the policy. No. CV075008280, 2008 WL 283945, at *3 (Conn. Super. Ct. Jan. 18, 2008). The court held these allegations to be insufficient because the plaintiff did not allege "an interested or sinister motive on the part of Allstate, which is necessary to plead sufficient facts to support the claim of ad faith." *Id.* The court further noted that without specific factual allegations of bad faith motive to review within the complaint, the court may not "look beyond the complaint for facts not alleged." *Id.* (quoting *Holler v. Buckley Broadcasting Co.*, 47 Conn. App. 764, 769 (1998).

In *Michalek*, Allstate sent a letter to the Insured stating that it would cancel her policy effective Dec. 16, 2005 for non-payment of the premium unless it received a minimum payment of $102.30 by Dec. 15, 2005. Then, on Dec. 22, 2005, Allstate sent a letter to the Insured and the Insured's mortgage lender, stating that it was canceling the policy effective Jan. 10, 2006 if it did not receive payment by Jan. 9, 2006. The Insured relied on the second notice and hand-delivered a check to her insurance agent on Dec. 30, 2005. On Jan. 2, 2006, a fire occurred at the Insured's house, causing significant damage and killing the

Insured. The Insured's insurance agent cashed the check on Jan. 3, 2006. On Jan. 4, 2006, Allstate sent the Insured a letter stating that the policy was canceled, effective Dec. 16, 2005 and reinstated on Jan. 3, 2006. Allstate thereby denied the Insured's claim for the Jan. 2, 2006 loss. *See Michalek,* No. CV075008280, 2008 WL 283945 (Conn. Super. Ct. Jan. 18, 2008).

The court reasoned that the allegations of improper refusal of plaintiff's insurance claim, conflicting notices of cancellation, and improper processing of the insurance payment contained no allegation of a dishonest purpose. "They simply do not rise to the level of bad faith because they lack any explicit or implicit allegation of improper motive by Allstate." *Id.* at *3. The court noted that it was not clear why the conflicting notices of cancellation were sent, but that there was no allegation that they were sent to confuse the plaintiff.

Similarly, Connecticut courts have found claims of bad faith to be insufficient where they assert only "conclusory allegations" providing "no basis for th[e] Court to reasonably infer bad faith," *Martin v. American Equity Insurance Company,* 185 F.Supp.2d 162, 164-65 (D.Conn 2002). In *Am. Equity Ins. Co.*, the court held that the Insured failed to allege sufficient facts to support a bad faith claim where the insured alleged only that the defendant insurer acted in bad faith by collecting premiums yet refusing to provide her with representation or a defense or to adhere to the terms of the insurance policy, but did not include any reference to specific facts demonstrating a sinister intent. 185 F.Supp.2d at 164. Those cases are distinguishable from the case at bar.

Here, Jean-Pierre's bad faith counterclaim is supported by particularized facts. He has alleged more than mere conclusory allegations. The parties do not dispute the issuance of a casualty insurance policy ostensibly insuring the property and its owner against certain losses and liabilities. Jean-Pierre pleads sufficient factual content from which the trier of fact may reasonably infer bad faith. *See Am. Equity. Ins. Co.*, 185 F.Supp.2d at 164-65. Specifically, Jean-Pierre's bad faith counterclaim has alleged that Allstate issued the insurance policy "with full knowledge" that he did not reside at the subject property, and that the subject property was not an owner occupied dwelling, but rather included rental units and a commercial space for lease, (Def. Countercl. ¶¶5-6), and that Allstate collected policy premium payments under the policy for nearly two years, mailing invoices to his address at a different location (Def. Countercl. ¶8). Further, he alleges that "following the December 7, 2007 fire at issue, Allstate tendered certain payments and took certain action, including but not limited to, razing the insured property, and trying to negotiate a resolution of the property damage claim(s) arising from the fire…all of which lead Jean-Pierre to reasonably believe he had coverage under the policy," (Def.'s Countercl. ¶16). Moreover, Allstate continued to accept policy premium payments after the fire. (Def.'s Countercl. ¶8). Subsequently, Jean-Pierre asserts Allstate "has sought to void coverage." (Def.'s Countercl. ¶ 14). Jean-Pierre asserts that Allstate took all of these actions "willfully and in reckless disregard for Mr. Jean-Pierre's rights under the Policy in that it has arbitrarily and in bad faith failed […] to settle and/or compromise [the underlying lawsuit.]" (Def.'s Countercl. ¶ 23).

**These allegations, laying out in detail Allstate's conduct in issuing the policy, taking action consistent with the policy for nearly two years, with the knowledge that Jean-Pierre did not reside at the property and that the property included rental units an a commercial space for lease, and then subsequently denying coverage under the policy, along with the assertion that the acts were committed with a bad faith motive, are sufficient to state a claim of breach of the implied covenant of good faith and fair dealing when reviewed in the light most favorable to the Plaintiff. Therefore, Allstate's motion to dismiss Jean-Pierre's count four counterclaim must be denied.**

### B. Analysis of Defendant's Counterclaims Asserting Waiver and Estoppel (Count Two and Three)

**Jean-Pierre also raises counterclaims of estoppel and waiver based on Allstate's actions during the two years after the December 2007 fire. In these counterclaims, Jean-Pierre asserts that Allstate's conduct, including accepting his premium payments, razing and paying-off the mortgage encumbering the property, and trying to negotiate a resolution of the property damage claims arising from the fire, led him to reasonably believe he had coverage under the policy, on which he relied to his detriment, thereby constituting a waiver of Allstate's right to deny coverage and estopping Allstate from attempting to deny coverage on the basis of facts which Allstate knew or to which knowledge is imputed to Allstate.**

**Under both Federal and Connecticut law, estoppel and waiver are properly raised as defenses, and may not be relied upon as affirmative causes action.** *See*

*Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996) ("equitable estoppel is a principle or an affirmative defense that serves to stop another party from denying a material fact"); *General Motors Corp v. Watson Enters., Inc.*, No. 04-CV-120, 2004 WL 2472268, at *3 (D. Conn. Oct. 27, 2004) ("equitable estoppel is appropriately used as a shield rather than as a sword");

*Covey v. Comen*, 698 A.2d 343, 345 n.5 (Conn. App. Ct. 1997) (treating Defendants' counterclaim of estoppel in quiet title action as a special defense rather than as a counterclaim because estoppel is properly pleaded as a special defense rather than a cause of action); *DJFM Properties, LLC v. Wells Fargo Bank*, No. CV-64008922S, 2006 WL 2730150, at *3 (Conn. Super. Ct. Sept. 5, 2006) (quoting *Dickau v. Glastonbury*, 156 Conn. 437, 242 A.2d 777 (1968) ("equitable estoppel is available only for protection and cannot be used as a weapon of assault"); *AFSCME, Council 4, Local 704 v. Dep't of Pub. Health*, 866 A.2d 582, 585 (Conn. 2005) ("[w]aiver is based upon a species of the principle of estoppel and where applicable it will be enforced as the estoppel would be enforced").

Whether or not the actions taken by Allstate in the two years after the December 2007 fire meet the substantive criteria for estoppel and waiver, because these claims were raised as affirmative causes of action rather than as special defenses, the claims are not recognized. *General Motors Corp.,* 2004 WL 2472268 at *3; *see also DJFM Properties*, 2006 WL 2730150 at *3.

Jean-Pierre's reliance on several cases to support his argument that waiver and estoppel may be raised as affirmative causes of action is misguided. These cases discuss the merits of defenses of estoppel and waiver, rather than

11

supporting his claim that estoppel and waiver may be used affirmatively as causes of action. *See Val Drugs, Inc. v. Lynn*, 402 F. Supp. 174, 177 (W.D.N.Y. 1975) ("it is well settled that the acts of an insurer which led the insured to believe he is covered under the policy estop the insurer from denying coverage under the policy"); *Boyce v. Allstate Ins. Co.*, 236 Conn. 375, (Conn. 1996) (reviewing the use of estoppel as a defense against defendant's counterclaim seeking reimbursement for previously paid damages); *Popowicz v. Metropolitan Life Ins. Co.*, 114 Conn. 333, 333 (Conn. 1996) (holding that plaintiff could not rely on the defense of waiver "if it could exist at all," without properly pleading it); *Fields v. Metropolitan Life Ins. Co.*, 132 Conn. 588, (Conn. 1946) (finding that while plaintiff's waiver claim had some merit, waiver must be pleaded in order to be considered by the court).

Under Connecticut law, waiver and estoppel are properly plead as special defenses, not affirmative claims. *Covey v. Comen*, 698 A.2d at 345 n.5 (Conn. App. Ct. 1997); *AFSCME, Council 4, Local 704 v. Dep't of Pub. Health*, 866 A.2d at 585. Because Jean-Pierre has raised waiver and estoppel in counterclaims as affirmative causes of action and not special defenses, these claims must be dismissed. The Court notes, however, that Jean-Pierre has also raised both waiver and estoppel as affirmative defenses, and these defenses will remain extant regardless of this dismissal of counterclaims two and three. This holding does not and should not be construed to be a ruling on the merits of such defenses.

## IV. CONCLUSION

Based upon the foregoing reasoning, Allstate's motion to dismiss Jean-Pierre's Counterclaims is GRANTED as to Counts Two and Three, and DENIED as to Count Four. The court holds that Jean-Pierre has sufficiently plead specific acts of bad faith to support a claim of breach of the implied covenant of good faith and fair dealing. The court further holds that waiver and estoppel are special defenses and may not be raised affirmatively as causes of action.

IT IS SO ORDERED.

/s/
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: August 30, 2011.